## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPH ROYBAL

      Plaintiff,

                                    Civ. No. 21-1046 KG/JFR

v.

DARDEN RESTAURANTS, INC., and
DARDEN CONCEPTS, INC.,

      Defendants.

---

### DEFENDANTS' RESPONSE TO MOTION TO REMAND

---

      Defendants Darden Restaurants, Inc., and Darden Concepts, Inc., (collectively "Defendants"), hereby respond to Plaintiff's Motion to Remand (Doc. no. 7) (hereinafter "Motion").

### I. <u>Summary</u>

      Plaintiff's Motion urges the Court to remand this case to New Mexico state court based on the lone and incorrect argument that the amount in controversy is less than $75,000, thus depriving the Court of diversity jurisdiction. Plaintiff's own demand belies the false premise of his Motion. Moreover, as shown below, Plaintiff has pleaded facts that put the amount in controversy above the jurisdictional threshold.

      Plaintiff does not dispute the diversity of the parties. Thus, the only issue before the Court is whether the amount in controversy exceeds the threshold. Since it does exceed that amount, the Court should deny the Motion.

## II.      Standard for Determining Amount in Controversy

Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of citizenship, that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a); see also *Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186, 1200 (D.N.M. 2012).  "The amount in controversy is ordinarily determined by the allegations in the complaint, or, where they are not dispositive, by the allegations in the petition for removal." *See   v. J. C. Penney Co*., 421 F.2d 597, 599 (10th Cir. 1970).  "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also* 28 U.S.C. § 1446(c)(2).  "A complaint that presents a combination of facts and theories of recovery may support a claim in excess of $75,0000 can support removal."

"The Tenth Circuit explained that 'the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[ke] it ***possible*** that $75,000 [is] in play." *Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186, 1202 (D.N.M. 2012), citing *McPhail v. Deere & Co.,* 529 F.3d 947, 955 (10th Cir. 2008) (emphasis added).  The Tenth Circuit has identified the means upon which the defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint;  (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as answers to interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward;  and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's own estimation of its claim is a proper means of supporting the allegations in the notice of removal. *See McPhail v. Deere & Co.,* 529 F.3d at 956.  The list is not exclusive.  *Id*.

A district court has diversity jurisdiction when it concludes it not "legally certain" that the claimant will recover an amount less than $75,000; once the defendant provides evidence of an amount in controversy that exceeds $75,000, "the case stays in federal court unless it is legally certain that the controversy is worth less than" $75,000. *Id.* at 954 (citation omitted), see also *Blancas v. State Farm Mut. Auto. Ins. Co.*, No. 20-1283 KG/LF, 2021 U.S. Dist. LEXIS 118715, at *8 (D.N.M. June 24, 2021). "The Seventh Circuit, upon which the Tenth Circuit heavily relied in *McPhail v. Deere & Co.,* has characterized the burden on a defendant as a 'pleading requirement, not a demand for proof.'" *Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186, 1206 (D.N.M. 2012), citing *Blomberg v. Serv. Corp. Int'l,* 639 F.3d 761, 763 (7th Cir.2011).

### III.   <u>Based on Plaintiff's Alleged Facts and Theories, the Amount in Controversy exceeds $75,000.</u>

At the heart of this amount in controversy dispute is Plaintiff's continually evolving story about the nature of his injuries.  He offers a moving target, and the damage allegations in his complaint cannot be reconciled with the injuries described in his Motion.  Thus, he lacked good grounds pursuant to Rule 11 to file either one or the other.  Nevertheless, Plaintiff's averments in his Motion are not among the factors to consider under *McPhail* and *Aranda*. Defendant has had no opportunity to conduct discovery, and as of this writing, Plaintiff still has failed to timely serve his Rule 26 initial disclosures, as required by the Court's Initial Scheduling Order (Doc. 3, p. 2).

At the outset, Plaintiff's own Motion provides the basis for finding the amount in controversy to be sufficient.  The Motion repeats the observation in *Aranda* that injury cases commonly settle for three times the medical special damages (Doc. 7, p. 5).  Plaintiff refers to this calculation as "Judge [James O] Browning's recipe for the calculation of an amount in

controversy." (Doc. 7, p. 6).  However, in *Aranda*, Judge Browning did not hold that the amount in controversy is to be calculated in that fashion.  Indeed, a defendant could rarely make such a showing, since removal of injury cases almost always happens before significant discovery takes place, and initial discovery requests are most often met with the objection that interrogatories on the subject of damages generally and total medical special damages are premature.  Therefore, rather, a plain reading of *Aranda* shows that that the threefold multiplier is merely one of several theoretical tools that inform the determination of whether the amount in controversy meets the jurisdictional threshold.  See *Aranda*, 884 F. Supp. 2d 1207.

More fundamentally, a common settlement amount is not an amount in controversy.  A settlement amount necessarily reflects (1) a risk of no recovery at all, and (2) an avoidance of the delays and cost of getting a case to trial, past an appeal, and actually recovering a judgment.  To be sure, once in trial plaintiffs do not ask juries for verdicts that reflect such risks.  It is unheard of for a plaintiff to ask a jury to award compensatory damages in an amount of just three times medical special damages, and plaintiffs frequently reject settlement offers of three times medical special damages.  Thus, the threefold multiplier is at most a floor of the amount in controversy, and not the ceiling.

Nevertheless, using the threefold multiplier of special damages as a guide to determining the base compensatory damages, this case objectively meets the jurisdictional threshold, and there is no credible doubt that, using the "possible" recovery standard set forth in *Aranda* and *McPhail*, the amount in controversy is over $75,000.   In his complaint, Plaintiff alleges that "as a result of eating the meal" at Defendants' restaurant, he suffered injury to four teeth "requiring" either extractions and implants, or a crown.  (Doc.  1-2, ¶ 11).  Since Plaintiff asserts in his Motion that

he has repaired one tooth with a crown, his complaint is reasonably read to assert that he needs three dental implants.

Dental implants can cost $8,000 each.  See Exhibit A, p. 1, 3.  If Plaintiff requires three implants, as he alleges, then it is possible his future special damages for those three teeth will reach $26,025.[1]  Adding the $1,203.78 he claims to have already spent on a crown, his total special damages are possibly $27,228.78.  Thus, a "common" settlement of Plaintiff's compensatory damages, using the *Aranda* calculation, would be $81,686.34, which is almost exactly what he demanded.  See settlement demand of $80,000 (Doc. 1-9).

However, Plaintiff does not contend his injury is average.  To the contrary, he alleges that his injuries are "severe and permanent."  (Doc. 1-2, ¶ 12).  Plaintiff alleges that he suffered "extreme conscious pain and suffering." (Doc. 1-2, ¶ 14).  Plaintiffs seeks to recover damages for physical pain, mental anguish, physical impairment, medical expenses, loss of household services, and loss of enjoyment of life, all in the past and future.  (Doc. 1-2, ¶ 29).

Further, Plaintiff's complaint does not stop at a basic compensatory claim for damages.  He also seeks punitive damages.  (Doc. 1-2, ¶¶ 26-27).  He contends his injuries are the result of Defendants' "willful, malicious, wanton, or reckless" conduct.  *Id.*  He alleges that Defendants acted with those states of mind when preparing his food, cooking his food, handling his food, cleaning his food, maintaining their facilities, and instructing their employees. (Doc. 1-2, ¶ 13).  Plaintiff alleges Defendants failed to comply with ordinances, regulations, laws, and statutes concerning the acquisition, maintenance and handling of foods.  (Doc. 1-2, ¶ 13).  Plaintiff concedes that a 1:1 ratio of punitive damages is in actual controversy; he does not contend or even suggest that punitive damages should be limited to that ratio. (Doc. 7, p. 6).  Plaintiff theories show

---

[1] At current rates in Santa Fe County, where Plaintiff resides, the gross receipts tax on three implants at $8,000 each is $2,025.

he intends to play upon juries' bias against corporations.  See MacCoun, R., *Differential Treatment of Corporate Defendants by Juries*, Law & Society Review, Vol. 30, No. 1 (1996).[2]  Using Plaintiff's own logic and his description of damages set forth in his complaint, the amount in controversy is likely $163,372.68 (possible medical special damages multiplied by three, and then doubled to reflect punitive damages) or more.[3]

Furthermore, Plaintiff's settlement demand of $80,000 (Doc. 1-9) supports a finding that the amount in controversy is over $75,000.  In the Tenth Circuit, "a plaintiffs proposed settlement amount 'is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiffs claim.'" *McPhail*, 529 F.3d at 956 (citation omitted). While "[t]he amount in controversy is not proof of the amount the plaintiff will recover ..., it is an estimate of the amount that will be put at issue in the course of the litigation." *Id.* Accordingly, a plaintiff's proposed settlement amount reflecting his "own estimation of [his] claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability." *Id.*  see also *Blancas v. State Farm Mut. Auto. Ins. Co.*, No. 20-1283 KG/LF, 2021 U.S. Dist. LEXIS 118715, at *12 (D.N.M. June 24, 2021).

Plaintiff's attempt to downplay his demand letter—authored by his counsel of record—suggests bad faith on his part at every stage of this case.  He states that his demand "was unreasonably high and served merely as a starting point for negotiations between plaintiff and defendants. As such, the demand was inflated and not an honest assessment of the damages." Motion, ¶ 12 (Doc. 7, p. 4).  It most certainly is not a "starting place," because Plaintiff has never

---

[2] Plaintiff's tactic is further evidence that the amount in controversy is more than he would have the Court believe.
[3] Using even the lower end of the range for dental implants, the amount in controversy still exceeds $75,000. Assuming Plaintiff could find a doctor to provide implants for half the upper price--$4,000 each--with 8.4375% tax the medical special damages would still reach over $14,200.  Three times that amount is $42,600.  Doubled for punitive damages the amount is $85,200.  The amount is right in line with the settlement demand (Doc. 1-9) that Plaintiff now says was not an "honest" assessment of damages.  See Motion, ¶ 12 (Doc. 4, p. 4)

dropped his demand.  Moreover, if in fact there are good grounds for the allegations in Plaintiff's complaint, including that Plaintiff required as many as three dental implants, then at $8,000 per implant plus tax and the other crown, the demand of almost exactly three times medical special damages was not inflated or unreasonably high under *Aranda*.  Such an amount does not even allocate an amount for punitive damages.  Plaintiff's demand is a reasonable reflection of the damages he alleges.

But therein lies the problem: Plaintiff's Motion relies upon the Court accepting his most *recent* argument that his own *prior* representations about his damages are inflated and not "honest."  The Court should reject Plaintiff's self-serving effort to downplay the amount in controversy for several reasons.  First, it contradicts his own complaint, which as noted above, alleges four damaged teeth, each possibly requiring implants.  (Doc. 1-2, ¶ 11).  In his Motion, however, he contends he suffered "at least *one* cracked tooth."  (Doc. 7, p. 4) (emphasis added).  It states further that he was "diagnosed with *a* fractured tooth," and that several more teeth were "found to be fractured." Motion at ¶ 7 (Doc. 7, p. 3) (emphasis added).  Plaintiff's curious phrasing ("found to be fractured"), coupled with his representation that the amount in controversy is $7,222.68 (which he calculates as the cost of one crown, tripled to reflect a common settlement and then doubled to reflect punitive damages), leaves doubt as to whether for the moment he has abandoned his claim that Defendants caused injury to more than one tooth. See Motion at ¶ 16 (Doc. 7, p. 5).  In fact, Plaintiff can't keep his position consistent from one page to the next of his own Motion.  See Motion, ¶ 14 (Doc. 7, p. 4-5) (stating that the amount in controversy is $30,000).

Worse, Plaintiff's argument goes a step further than his admitted dishonest damage assessment in his demand letter: to reach his conclusion that the amount in controversy is only $7,222.68, he necessarily relies on the premise that he only needs crowns and thus had no good

ground to allege in his complaint that he needed extractions and dental implants. (Doc. 1-2, ¶ 11). Likewise, if the account statements attached as exhibits to his Motion are to be believed that he only needs crowns and not implants, then the complaint's allegation that he needs implants was made in violation of Fed. R. Civ. P. 11.[4]

Lastly, contrary to Plaintiff's argument, a claim for damages that generally relies on future medical expenses is sufficient to establish the amount in controversy future medical expenses. *Robinson v. Wal-Mart Stores Tex., L.L.C.*, 561 Fed. Appx. 417, 418 n.2 (5th Cir. 2014), citing *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 391 n.14 (5th Cir. 2000). "[In] suits for personal injury … future medical expenses are routinely included in the calculation of damages flowing from an particular injury. *Elbert v. Frontier Town Campground*, No. WMN-07-1905, 2008 U.S. Dist. LEXIS 128608, at *8-9 (D. Md. June 12, 2008), citing *Crum v. Circus Circus Enter.,* 231 F.3d 1129 (9th Cir. 2000) (relying in part on estimated future medical expenses to determine amount in controversy and reversing dismissal for lack of subject matter jurisdiction); *Freeman v. Busch*, 199 F. Supp. 2d 907, 916-17 (S.D. Iowa 2002) (finding amount in controversy requirement met in part future medical expenses); *Birch v. Schnuck, Inc.*, Civ. No. 95-2370, 1996 U.S. Dist. LEXIS 18281, 1996 WL 705789 at *3 (D. Kan. 1996) (finding amount in controversy met in part based upon prognosis that future medical expenses were a possibility).

Simply put, Defendant has shown that the amount in controversy is over $75,000. Using the *McPhail* and *Aranda* paradigm that a defendant need only establish facts "that ma[ke] it possible that $75,000 [is] in play," this case must remain in federal court.

---

[4] None of Plaintiff's exhibits show any description of his injuries, evaluation of his injuries by a doctor, the onset of symptoms, or any connection to biting a foreign object.

**IV.**    <u>**Plaintiff's Request for Fees and Costs Must be Denied.**</u>

Plaintiff asks the Court to award unspecified attorney fees and costs, because, he falsely asserts, Defendants' removal "was an attempt to waste the Court's time and Plaintiff's expense." (Doc. 7, p. 6).

The Court should summarily reject Plaintiff's request for an assessment of fees and costs against Defendants. As explained above, the allegations of Plaintiff's complaint are that as many as four teeth required dental implants, and that Plaintiff suffered "severe and permanent."  (Doc. 1-2, ¶ 12).  He alleges that he suffered "*extreme* conscious pain and suffering."  (Doc. 1-2, ¶ 14) (emphasis added).

To determine whether more than $75,000 was in controversy, Defendants first turned to person most knowledgeable about what was at issue: Plaintiff himself, who demanded $80,000 to settle his claim.  Yet, without an ounce of self-reflection, Plaintiff now demands that Defendants pay his attorney fees for the offense of relying on his attorney's statement of how much Plaintiff values his claims.  If there is fault in such reliance, then the fault is Plaintiff's.  His unclean hands preclude the recovery he seeks in his Motion.  Plaintiff is the one who set the value of the amount in controversy.  While he now contends the demand was not honest, he should not reap a reward for any such dishonesty.  To rule otherwise would be to encourage gamesmanship by litigants and counsel, and to discourage the professional obligations applicable to legal practice.  "As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with others."  Preamble, New Mexico Rules of Professional Conduct.

Even using the (unlikely) lowest estimated cost of a dental implant, ($3,500), four such implants would cost $14,000.  See Exhibit A, p. 1-6.  Using *Aranda* as a guide, that amount times three is $42,000, and tax on that amount is $3,543, for compensatory damages totaling $45,543.

Plaintiff concedes that he seeks at least a 1:1 ratio of compensatory to punitive damages, so using the lowest future medical expenses to be anticipated by the allegations of the complaint, the amount in controversy is beyond the jurisdictional threshold. These are not speculative damages. These are objectively reasonable inferences from Plaintiff's complaint and the very kind of consumer-oriented data that Americans turn to for reasonable cost estimates of a common procedure.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Garrett v. Cook*, 652 F.3d 1249, 1254 (10th Cir. 2011) (citation omitted). Consequently, the removing party's intent is irrelevant. *Martinez v. El Paso Corp.*, 2011 U.S. Dist. LEXIS 91016, 2011 WL 3606813, at *3 (W.D. Tex.) (quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000)); see also *STC.UNM v. Quest Diagnostic Inc.*, No. 20-197 KG/KK, 2020 U.S. Dist. LEXIS 146839, at *24 (D.N.M. Aug. 14, 2020).

Defendant's removal was objectively reasonable. They relied on Plaintiff's demand and the allegations of his complaint. If a party cannot rely on the representations of an opposing party who is represented by counsel, to the degree that doing so gives rise to sanctions, then Fed. R. Civ. P. 11 and the general expectation that lawyers deal honestly have lost their meaning.

WHEREFORE, for the foregoing reasons, Defendants ask the court to deny Plaintiff's Motion to Remand.

Respectfully submitted,

HALL & EVANS, LLC

By: /s/ *Steven L. Gonzales*
    Steven L. Gonzales
    Hall & Evans, LLC
    2200 Brothers Road
    Santa Fe, NM 87505
    Tel: 505-303-4592
    Cell: 505-417-3898
    gonzaless@hallevans.com
    ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served this 13th day of December, 2021 via the CM/ECF filing system to all counsel of record.

/s/ *Steven L. Gonzales*



( h tt p s: // a s k t h e d e n ti st .c o m /)

the dentist

(https://askthedentist.com/directory/)

# Dental Implants Cost: Price by Type, Procedure & How to Save

 by Angela Grgic' (https://askthedentist.com/author/angelag/) on February 15, 2017



EXHIBIT A



## TABLE OF CONTENTS

[HIDE]

Dental Implant Cost                                                    +

Why are dental implants so expensive?

The Dental Implant Process (Before, During, and After Surgery)          +

Implants & Dental Insurance                                            +

How to Financially Prepare for Dental Implants

How to Save Money on Dental Implants

Cheap Dental Implants Near Me?

FAQs on Dental Implants

Are dental implants worth it?

**What are dental implants?** Dental implants replace an extracted tooth with an artificial tooth root, shaped like a screw, surgically inserted into the jawbone.

A natural process called osseointegration occurs in which the implant fuses with the bone, creating a firm foundation on which to place an implant crown. The crown fills in the empty space left between the remaining teeth.

Nearly 6% of American adults have dental implants (https://pubmed.ncbi.nlm.nih.gov/30075090/) and by the year 2026, this number may rise to 23% or more of the adult population.

Dental implants are a type of **dental surgery** (https://askthedentist.com/dental-surgery/) that requires a multi-step surgical process. They are one of the most expensive *and* most successful (https://pubmed.ncbi.nlm.nih.gov/22611899/) dental procedures to restore missing teeth.

**How much do dental implants cost?** Dental implants cost between $3,000-$4,500 per tooth on average, including the total price of the implant, abutment, and crown. Bone grafting, which is also required in many cases, costs an additional $200-$3,200.

This is a lot of money, but because implants last so long and don't have to be replaced every few years, they can be less expensive over time than options with cheaper up-front costs.

**How can you save money on dental implants?** Popular ways to save on dental implants may include utilizing dental insurance coverage, choosing a special type of implant like All-on-4®, or traveling abroad for treatment.

Let's take a look at a breakdown of the cost of dental implants, what you can expect during your procedure, and 10 ways to save on your dental implants.

## Dental Implant Cost

*Dental implants, also known as tooth implants, may cost as little as $500 and as much as $8,000 per tooth for the implant, abutment, and crown. The average cost of a single tooth dental implant procedure is $3,000-$4,500 in the US.*

The cost to get a full mouth of individual dental implants ranges anywhere from $25,000-$80,000.

In the UK, a single dental implant costs £2,000-£2,500. A full mouth of implants in the UK will probably cost £25,000 and up.

These costs may or may not include bone grafts, which are often a recommended or required part of dental implant surgery but billed as a separate item.

This price varies greatly by location, even within the same country. You may be able to get standard implants at a reduced cost based on the number of implants you get at one time.

Cheap implants may look like a great option for your wallet, but they are far less likely to last a long time. Some cheap products will list a price in the $500-$1,000 range but fail to include necessary parts of the procedure in that cost, such as the crown.

There are many factors that determine the price of a dental implant, like the dentist's overhead, location, and individual fee structure.

The cost of an implant also includes assessment of each patient's jawbone and gum condition, whether or not a bone graft and/or extraction or temporary tooth is necessary, and anesthesia requirements.

## Breakdown of Individual Costs During Dental Implant Treatment

Let's break down all of the costs involved in the process of dental implant treatment. Some of these are not included in the average dental implant cost but are still important to consider as you consider whether or not this is the right choice for you or your family.

- **Consultation/evaluation:** $50-$300
- **Panoramic X-ray:** $100-$250
- **Cone beam CT (CBCT):** $150-$750
- **Tooth extraction:** $150-$700
- **Bone grafting:**

  - Simple (cow, cadaver, or synthetic): $200-$300
  - Complex (cow, cadaver, or synthetic): $1,000-$1,200
  - Simple (patient's bone): $1,800-$2,200
  - Complex (patient's bone): $2,800-$3,200

- **Abutment:** $300-$600
- **Implant crown:** $900-$1,500
- **Dental implant:** $1,500-$3,000

All of these costs vary greatly depending on your dentist's location.

## Costs by Dental Implant Type

The exact type of dental implant your dentist recommends plays a part in the total cost of your dental implant. Keep in mind, not every dental implant is right for every patient.

### Mini Dental Implants

These implants are used as temporary implants or to stabilize a denture. Mini dental implants were not originally intended for long-term use.

However, many of them have to be placed for success of the dental implant. Sometimes, a mini dental implant is the only choice because there's not enough bone for a full-sized, standard implant.

**Cost:** $500-$1,000 per tooth

## Standard Dental Implants

The standard dental implant is made of titanium alloy. You can choose various materials for your dental implant crown, including porcelain-fused-to-metal (PFM), e. max, layered zirconia, full-contour zirconia, porcelain-filled composites, and full dental gold.

Zirconia and dental gold options are typically the sturdiest and longest-lasting of the choices.

**Cost:** $3,000-$4,500 per tooth

## All-on-4® Dental Implants

All-on-4® Dental Implants are a trademarked dental implant procedure that uses 4-6 titanium implants to secure dentures to an entire arch (either top or bottom).

This brand of replacement teeth offers snap-on (removable) implant-retained dentures as well as screw-retained (fixed) implant-retained dentures. The major difference between the two is that screw-retained dental implants can only be removed by your dentist, while removable dentures can be removed at any time.

There are a number of risks (https://www.dentistryiq.com/dentistry/implantology/article/16365915/when-is-allon4-the-best-option-5-factors-to-consider-when-creating-your-dental-treatment-plan) associated with the All-on-4® procedure, and it's not right for everyone. However, you may consider this option with your dentist as an alternative treatment plan to individual dental implants or a set of normal **dentures** (https://askthedentist.com/what-to-know-about-dentures/).

**Cost (removable):** $8,000-$17,500

**Cost (fixed):** $15,000-$30,000 per arch

## Clear Choice Dental Implants

Clear Choice Dental Implant Centers offer a specialized dental implant treatment that is offered as an all-in-one procedure at an individual location.

**Cost:** $3,000-$6,000 per tooth

## Same Day Dental Implants

The process of same day dental implants combines dental implant surgery on the same day as tooth extraction and bone grafting.

Case 1:21-cv-01046-DHU-JFR   Document 10   Filed 12/13/21   Page 17 of 17

Same Day Dental Implants are also known as:

- Immediate dental implants
- Immediate loading of dental implants
- Teeth-in-a-Day

According to a Cochrane systematic review, this less conventional process can be successful (https://pubmed.ncbi.nlm.nih.gov/18271370/), but results are still unclear. Individual dentists have more varied results with same-day implants compared to conventional implants, which are placed about 4-6 months after the initial extraction.

**Cost:** $5,000-$8,000 per tooth

# Why are dental implants so expensive?

**Dental implants** (https://askthedentist.com/dental-implants/) are expensive because they are an invasive treatment but long-lasting option, and the gold standard for tooth replacement.

What are the exact reasons dental implants cost so much?

- **Dental implants require a surgical procedure.** Dental implant surgery is far more complex than other restorations like dental fillings. For the most part, patients will require local anesthesia and a form of dental sedation.
- **To place a dental implant, a dentist must have specialized training.** Your general dentist must have completed training in implantology to perform a full dental implant. Otherwise, you will have to see an oral surgeon, prosthodontist, or another type of specialist. Either way, the rate charged may be significantly higher than other procedures because of the credentials and training required to do the work.
- **The implant requires many hours of dental laboratory work to fabricate.**
- **High-quality implant materials and specialized types of implants are usually more expensive.**
- **Most dental implant procedures take multiple visits and several steps to complete.** In order, you can expect a tooth extraction, bone graft, implant consultation, implant insertion procedure, abutment placement, and permanent crown placement. At a minimum, this usually requires at least 2 visits.

# The Dental Implant Process (Before, During, and After Surgery)